[Nos. B033315, B025896. Second Dist., Div. Three. July 18, 1989.]

J. M. YOUNG, Plaintiff and Respondent, v.
JEROME B. ROSENTHAL, Defendant and Appellant.

[Nos. B024983, B026834 and B026937. Second Dist., Div. Three. July 18, 1989.]

J. M. YOUNG, Plaintiff and Respondent, v.
JEROME B. ROSENTHAL, Defendant and Respondent;
ORING, MARGOLESE & SCHULTE, Objector and Appellant.

COUNSEL

Cooper, Epstein & Hurewitz, Richard D. Agay and Kenneth A. Weissman for Plaintiff and Respondent.

Ronald P. Kaplan for Defendant and Appellant.

Oring, Margolese & Schulte and Vana Parker Margolese for Objector and Appellant.

OPINION

CROSKEY, J.—In this case, involving five separate appeals, we are presented with an incredibly obscene example of the defiance, subversion and abuse of the judicial system in general and the procedures for pretrial discovery in particular. In affirming a summary judgment and two trial court sanction orders, we write what should be the final chapter of the unsuccessful efforts of a disbarred lawyer to avoid paying fees for valuable

legal services rendered to him. As two of the five appeals were frivolous and were clearly motivated by an intent to delay and harass the respondent and, in the process, imposed a significant burden on this court, we impose substantial sanctions.

Defendant/appellant Jerome B. Rosenthal (Rosenthal) appeals from a summary judgment entered on February 16, 1988, awarding $167,238.14, plus $37,066.03 interest and costs to plaintiff/respondent J.M. Young, the assignee of the law firm Cooper, Epstein & Hurewitz (CEH).[1] (Case No. B033315.) Rosenthal also appeals from the orders of November 20, 1986 (November 20 Order) and December 16, 1986 (December 16 Order) awarding monetary sanctions.[2] (Case No. B025896.)

Three other appeals, which also relate to the same discovery dispute which is the subject of Case No. B025896, have been filed by Rosenthal's former attorneys, Oring, Margolese & Schulte (OMS). (Consolidated Case No. B024983.).[3] In Case Nos. B024983[4] and B026834, OMS appeals from the November 20 Order and the December 16 Order which imposed the sanctions which are also the subject of Rosenthal's appeal in Case No. B025896. In the third appeal, Case No. B026937, OMS appeals from the order of March 9, 1987, in which the trial court refused to require Rosenthal to reimburse OMS for any attorneys' fees sanctions they may have paid pursuant to the trial court orders which are the subject of Case Nos. B024983 and B026834.

Finally, in Case Nos. B033315 and B025896, CEH has requested that attorneys' fees plus costs be awarded to them as sanctions against Rosenthal

---

[1] Because Young, who is the controller of CEH, is merely the nominal plaintiff/respondent, reference to the plaintiff/respondent will be to CEH and not Young.

[2] By order of January 8, 1988, this court held that those portions of the November 20 Order and the December 16 Order which awarded money sanctions under Code of Civil Procedure section 128.5 against Rosenthal are appealable " '. . . because [they are] a final order on a collateral matter directing the payment of money.' " (*I. J. Weinrot & Son, Inc.* v. *Jackson* (1985) 40 Cal.3d 327, 331 [220 Cal.Rptr. 103, 708 P.2d 682]; compare, however, *Slemaker* v. *Woolley* (1989) 207 Cal.App.3d 1377 [255 Cal.Rptr. 532] if sanctions are not awarded under section 128.5.) This court also dismissed, with prejudice, any purported appeal from the two orders, other than those portions thereof imposing Code of Civil Procedure section 128.5 monetary sanctions, on the ground that such an appeal would seek review of nonappealable orders.

[3] We have, at OMS's request, consolidated Case Nos. B024983, B026834 and B026937. For purposes of this appeal, all proceedings are carried under consolidated Case No. B024983.

[4] It appears from the record that the notice of appeal filed by Vana Parker Margolese, as "counsel" for Rosenthal, is inappropriately worded in Case No. B024983. Margolese has no standing to appeal from the November 20 Order which made an award in favor of CEH and against Schulte and Rosenthal. That order was not directed in favor of or against Margolese. However, from other papers filed by Margolese, it also appears that she is the attorney of record for the law firm of OMS as well as Oring, herself and Schulte, as individuals. Therefore, for purposes of this appeal, we deem the notice of appeal to have been filed by Margolese on behalf of Schulte and that the error in the wording of the notice of appeal was inadvertent.

and his attorney on appeal for bringing "frivolous, meritless and completely unsupported" appeals. In consolidated Case No. B024983, CEH has also requested that OMS pay CEH's attorneys' fees for "frivolous appeals."

Because all of these appeals share the same factual background we have determined, in the interest of judicial economy, to dispose of them in a single opinion.

## FACTUAL BACKGROUND

The facts upon which these appeals turn are either undisputed or unchallenged on appeal (see fn. 15, *post*) and were, in any event, determined in three different trial court proceedings upon conflicting declarations. (See *Kroopf* v. *Guffey* (1986) 183 Cal.App.3d 1351, 1356 [228 Cal.Rptr. 807].) ▮ In accordance with the usual rules on appeal, we view the facts in the light most favorable to the respondent. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 278, pp. 289-291.)

In November 1983, Rosenthal, a former attorney,[5] retained CEH to represent him in a number of actions, all of which related to his law practice. By January of 1986 Rosenthal owed CEH $164,343.35 for services rendered on his behalf. Rosenthal refused to pay and on January 22, 1986, CEH filed a complaint for money ((1) open book account; (2) account stated; (3) work, labor and services; and (4) breach of contract). Rosenthal hired the law firm of OMS to represent him, and on February 21, 1986, filed (but did not serve) a cross-complaint against CEH[6] seeking recovery of approximately $70,000 in attorneys' fees paid CEH, as well as general damages of $6 million and punitive damages of $30 million.[7]

On February 12, 1986, CEH served a request for identification and production of documents. Rosenthal was asked to produce the original docu-

---

[5] Rosenthal, an attorney for approximately 54 years, was licensed to practice in California until his disbarment in 1987 (*Rosenthal* v. *State Bar* (1987) 43 Cal.3d 612 [238 Cal.Rptr. 377, 738 P.2d 723]).

[6] The cross-complaint for damages alleged (1) breach of contract, (2) breach of fiduciary duty, (3) deceit, (4) malpractice, (5) intentional infliction of emotional distress and (6) negligent infliction of emotional distress.

[7] It appears that Rosenthal also is or has been involved in numerous lawsuits against other attorneys who previously represented him or represented parties who opposed him or were his former partners or with whom he otherwise was associated in the practice of law. (See Rosenthal v. Hafif and Hafif v. Rosenthal, LASC Nos. EAC 37639/C 500612; Rosenthal v. Hunt, LASC No. C 173882; Rosenthal v. Wilner and Lascher, LASC No. C 268010; *Rosenthal* v. *Irell & Manella,* LASC No. C 279386 (135 Cal.App.3d 121 [185 Cal.Rptr. 92]); Conrad v. Rosenthal and Rosenthal v. Conrad, LASC Nos. C 476121/C 480712/C 545108. The record also indicates that Rosenthal has sued OMS for malpractice (LASC No. C 649143) and has also sued the attorney whom he engaged after CEH withdrew from representing him (Rosenthal v. David E. Frank, LASC No. C 679661).

ments (or, if unavailable, then legible copies) at CEH's office. However, Rosenthal instead produced copies which in large measure were illegible. In addition, the copies were cropped off portions of the original documents, they were not properly identified, and documents known to be in Rosenthal's possession were not produced.

On February 18, 1986, a second request for identification and production of documents was served upon Rosenthal. In addition, CEH served interrogatories and a set of requests for admission.[8]

On February 28, 1986, Rosenthal was served with a third request for identification and production of documents, together with a second set of interrogatories and a second set of requests for admission.[9]

Rosenthal refused to answer the interrogatories, objecting to the form of the questions. He also objected to the request for documents. All of CEH's attempts to resolve the matter out of court were unsuccessful. On March 6, 1986, CEH served another document request for identification and production of all documents which Rosenthal received from, or made in, the offices of CEH. These documents were neither identified nor produced. Finally in a letter dated March 19, 1986, Margolese (she and Schulte were the OMS partners who represented Rosenthal in this matter) stated that she would be "happy to produce all the documents in both mine or Mr. Rosenthal's possession" at Rosenthal's deposition which had been set for March 27. This echoed a similar promise made in a letter written by Margolese on March 10, 1986.

On March 20 and 24, 1986, Rosenthal served unverified supplemental responses to the various requests for documents. The response on the 24th contained no identification but stated that, "as indicated in attorney's letter of March 10, 1986 . . . [Rosenthal] is willing and will provide ALL documents in his possession and will bring them to [his] deposition and/or will make them available for photocopyong [*sic*] in their entirety prior to the

---

[8] Among other inquiries, Rosenthal was asked when he had conversations with CEH; whether any denial of the allegations of the complaint was based upon oral communications or writings; whether his failure to admit that the time spent as shown in such billings was reasonable was based upon any oral communications or writings; whether he contended any of the charges in the billings were at improper rates; and whether he contended that he was entitled to an offset or reduction. He was also asked for the identification of each billing he had received from CEH and which of the billings he had received showed dates when services were performed and the quantity of time performed.

[9] The interrogatories primarily sought the bases of Rosenthal's contentions set forth in his responsive pleadings, i.e., whether the allegations of his affirmative defenses were based upon any oral communications or writings. Rosenthal was also asked to identify the facts and conversations on which his contentions, denials of requests for admissions and allegations were based.

deposition." However, no arrangements were made for copying before the deposition and nothing was produced at Rosenthal's deposition on the morning of March 27. It was first promised that they would be delivered that afternoon; however, Schulte later telephoned CEH and said he would not produce the documents until the following Monday. On Monday he called and said he was "reneging" and would not deliver the documents to CEH's offices "ever."

Rosenthal's deposition, which was to begin on March 27 and continue from day to day, was adjourned after only two hours because Rosenthal claimed he had a dental appointment. He also stated that he would not return for the resumption of his deposition the next day or even the next week.

Because of Rosenthal's refusals to produce the requested documents or return for his deposition, CEH was placed in a position of losing its priority in discovery.[10] Therefore, on April 10, 1986, CEH telephoned Schulte and notified him that they were going to make an ex parte application seeking various relief regarding the priority of discovery. To avoid the ex parte hearing, Schulte agreed to extend CEH's time to respond until 10 days after the completion of Rosenthal's deposition. Schulte also promised to produce the requested documents at Rosenthal's deposition. On April 16, 1986, this agreement was repudiated and CEH then sought a protective order. In addition, due to Rosenthal's continual discovery violations, CEH filed a number of discovery motions, including (1) a motion to compel further responses to the combined first set of interrogatories and requests for admission, (2) a motion to compel further responses to the second set of interrogatories and requests for admission, and (3) a request for sanctions against Rosenthal and his attorneys for their "willful and deliberate refusal to cooperate in discovery."

On May 29, 1986, Judge Cardenas ordered all counsel to meet and confer in an effort to resolve their discovery disputes and deferred his ruling on CEH's motions until June 4, 1986. This date was continued at the request of the parties and, on June 5, 1986, the parties presented to the court a Stipulation to Resolve Discovery Disputes and Order (Stipulation). The Stipulation was signed by Schulte, as attorney for Rosenthal. It provided that (1) CEH would revise its interrogatories and requests for admission, (2) Rosenthal would comply with the different requests by certain dates, and (3) Rosenthal would appear for his deposition on July 8, 1986. It also provided

[10] All of Rosenthal's responses to discovery were due before CEH was required to respond to Rosenthal's March 21, 1986, Request for Identification and Production; however, because of Rosenthal's actions, the due date for CEH's response was about to arrive before Rosenthal had responded to any of the discovery.

that it would become effective when the court signed the order attached to the Stipulation. The court signed that order on June 5, 1986 (June 5 Order).

Pursuant to the Stipulation and the June 5 Order, CEH served Rosenthal with the revised interrogatories and requests for admission. In response, and in apparent recognition of his obligations under the June 5 Order, Rosenthal submitted numerous papers to CEH and to the court.[11] However, Rosenthal refused to answer all the interrogatories by July 2nd, the date specified in the June 5 Order. He further refused to recognize CEH's continued priority even though his deposition was delayed, and CEH was forced to obtain an additional order on July 3d maintaining discovery priority.

In response to Rosenthal's failure to answer the interrogatories as required by the June 5 Order, CEH sent a letter on June 25, 1986, to Margolese which stated in part: "On June 6 I went to the trouble of alerting you of the deadlines, and the urgency of meeting those deadlines. Not until this week did you express any difficulty in complying. [¶] When we met . . . two days ago, Mr. Schulte and you told me that Mr. Rosenthal had been dictating responses . . . . I do not accept that there is any good cause why partial responses could not be given before the end of this week; nonetheless, I have conditionally relented that position as the enclosed Stipulation shows. [¶] If I am to receive inadequate responses, I should be in a position to move forward with respect thereto as soon as possible rather than delaying the ultimate. Delay is prejudicial."

Rosenthal's attorneys rejected the proposed stipulation that CEH had enclosed with their letter and refused to discuss it. Instead they unsuccessfully sought a court order to extend the deadline, expressly representing that the first set of answers had been completed in draft form on June 25. However, by August 1, 1986, Rosenthal still had not answered any of the interrogatories which had been originally served the previous February.

As to Rosenthal's deposition, the June 5 Order provided that he was to appear on July 8, 1986, at CEH's offices and the deposition was to continue from day to day until finished. Although Rosenthal appeared during the morning of July 8, he never reappeared after the lunch hour, claiming illness. Thereafter, he further refused to appear on any subsequent day.

Rosenthal also failed to produce the requested documents as required by the June 5 Order. At his deposition on July 8, Rosenthal at first misrepresented the fact that a group of papers consisted of "originals" when in fact all of the papers to which he referred were "photocopies." When he did

---

[11] See footnote 18, *post.*

acknowledge that the papers presented were not originals he then refused to allow them to be marked as exhibits. After much discussion on the record, Rosenthal finally produced the originals of the requested documents but still refused to allow them or the copies to be attached as exhibits to his deposition. CEH advised him numerous times of his violations and requested that he cure the various defects. This Rosenthal continually refused to do.

Due to the repeated violations of the June 5 Order by Rosenthal, CEH, on August 14, 1986, served and filed a Notice of Motion to Strike Answer, Render Judgment for Plaintiff, Dismiss Cross-Complaint, and for other relief under Code of Civil Procedure section 2034 and for attorneys' fees against both Rosenthal and his attorneys. In the alternative, CEH asked "for orders set forth in the Proposed Alternative Order separately filed and served concurrently herewith." Rosenthal opposed the motion and served answers to the first set of interrogatories.[12]

On August 29, 1986, the court refused to strike Rosenthal's answer but decided on lesser sanctions. The court then signed the alternative order (August 29 Order), with modifications, specifically finding that Rosenthal had willfully failed to answer interrogatories, appear for his deposition and identify or produce documents and permit documents to be marked as exhibits at his deposition. The court further found that Rosenthal and his attorneys were guilty of "bad faith action and tactics that [were] frivolous and solely intended to cause unnecessary delay" and awarded attorneys' fees of $23,030 to CEH. The court also found that Rosenthal failed to comply with the June 5 Order which it held was an order made under section 2034, subdivision (a). Finally, and most significantly, the August 29 Order (1) provided that certain facts be deemed established in accordance with the claims of CEH and (2) placed severe evidentiary limitations at trial on Rosenthal. In short, it was directly responsive to the discovery violations which Rosenthal had committed.

On September 8, 1986, Rosenthal served and filed a motion for reconsideration of the August 29 Order. On October 15, 1986, he filed a motion to vacate the Stipulation and the June 5 Order. These motions reargued everything that had been raised in Rosenthal's opposition to the August 29 Order and, in addition, falsely accused counsel for CEH of fraud and deceit in connection with the execution of the Stipulation (see fn. 24, *post*). On November 20, 1986, Judge Cardenas found that the motion to vacate the

---

[12]These answers apparently were served on the day before the date set for the hearing on the motion and, according to CEH, were evasive and of an improper nature.

Stipulation and the June 5 Order was "brought in bad faith" and was "totally and completely without merit."[13] The court then awarded CEH fees in the amount of $14,500 to be paid by Rosenthal and Schulte "jointly and severally." Thereafter, Rosenthal took off calendar the motion for reconsideration filed on September 8, 1986. However, CEH did not withdraw its request for sanctions. That request came before Judge Ross on December 16, 1986.

---

[13] The November 20 Order made by Judge Cardenas provides in relevant part: "The Court, after a full and complete review of all papers filed in support of and opposition to the instant motions, rules as follows:

"1. Defendant's motion to vacate the Stipulation and Order of June 5, 1986 is denied.

"2. Defendant's motion to vacate the Ex Parte Order of July 3, 1986 is denied.

"The Court's Order of June 5, 1986 was signed pursuant to a stipulation—entered into between the parties acting through their respective counsel—*for such an Order.*

"The Court concludes and finds that *all fourteen pages* of the 'Stipulation to Resolve Discovery Disputes and Order' were reviewed by counsel for defendant, Victor A. Schulte, *before* he signed it, thus binding his client. Per plaintiff's Memorandum of Points and Authorities in Opposition to the Motions [f]iled November 19, 1986.

"3. Plaintiff's request for attorneys' fees pursuant to Section 128.5, Code of Civil Procedure is granted.

"Plaintiff shall recover fees in the total sum of $14,500.00 from defendant, Jerome B. Rosenthal and Victor A. Schulte (jointly and severally). The court finds that defendant's motions to vacate the Court's prior orders of June 5, 1986 and July 3, 1986 were brought in bad faith and were frivolous within the meaning of Section 128.5, Code of Civil Procedure.

"The Court adopts and incorporates, as its specifications of reasons for the award of fees, plaintiff's Memorandum of Points and Authorities filed November 19, 1986. The conduct, circumstances and legal arguments so meticulously set forth therein provides the basis for the Court's conclusion (finding) that the instant motions were brought in bad faith and were totally and completely without merit."

The memorandum to which Judge Cardenas referred consumes 57 pages of the record on appeal. We concur with CEH's brief that certain portions are particularly relevant and those are set out below. By his incorporation order, Judge Cardenas specifically found the following to be established:

1. "Rosenthal argues that the June 5 Stipulation was not binding on him because Mr. Schulte was not authorized to enter into this Stipulation on Rosenthal's behalf. . . . Were this contention valid, then this Court would have to rule that *Rule 319* and 'meet and confer orders' in general are void; if after meeting the attorneys cannot enter into a stipulation to resolve disputes, then of what purpose is their meeting?"

2. "Rosenthal argues that the June 5 Stipulation signed by Mr. Schulte impairs Rosenthal's substantial rights and his cause of action. Rosenthal's position is without merit."

3. "Mr. Schulte was acting well within his authority as Rosenthal's attorney of record."

4. "In the face of a motion to compel answers and in response to an order to try to resolve the disputes Mr. Schulte certainly had authority to agree, as he did agree, to provide answers, rather than having the Court decide on the merits each of Mr. Schulte's objections and subjecting his client to the risk of sanctions. Hardly could that be deemed to be outside of an attorney's authority."

5. "Mr. Schulte's stipulation that Rosenthal would be produced for deposition does not constitute a waiver of either procedural or substantive rights. Rosenthal was already under a statutory duty to appear for his duly noticed deposition."

6. "Mr. Schulte further agreed on Rosenthal's behalf to produce documents, but these were simply documents which had been previously requested under §§ *2019* and *2031,* and

On that date, Judge Ross found that the moving papers seeking reconsideration filed by Rosenthal's attorneys were "false," were known to be false at the time of filing, were made in bad faith "without substantial

---

Rosenthal's attorney, by stipulating to produce the documents which had been duly requested, in no way impaired Rosenthal's substantial rights or his cause of action."

7. "By signing the Stipulation, Mr. Schulte did recognize Plaintiff's discovery priority. 'However, Rosenthal agreed to Plaintiff's discovery priority all along' . . . and thus it appears that no right whatsoever was being given up by Mr. Schulte."

8. "Mr. Schulte's act of executing the June 5 Stipulation and Order was embraced as ancillary or incidental to his general authority as Rosenthal's attorney of record, one well within his authority."

9. "On June 6, 1986 Rosenthal was faced with a potentially disastrous court order, in light of his numerous discovery violations and the motions to compel which had been (and were being) brought against him. As of June 5, 1986 it was clearly within [sic] Rosenthal's best interests to resolve the discovery disputes without having a law and motion judge review Rosenthal's blatantly bad faith conduct. Mr. Schulte simply applied his best discretion to protect his client's rights and achieve his client's fundamental goal, of defending the instant lawsuit (and possibly of prosecuting his cross-complaint)."

10. "Mr. Schulte's act in entering the June 5 Stipulation did not in any way impair his client's case. The prejudice which Rosenthal has suffered, if any, did not take place in the June 5 Stipulation and Order, but took place by reason of his blatant repeated violations of the Discovery Act and June 5 Stipulation and Order and the resulting August 29, 1986 order of Judge Ross in response to a wholly separate motion."

11. "The mere fact that Mr. Schulte purported to enter into the Stipulation on behalf of his client gives rise to a (rebuttal) [sic] presumption that Mr. Schulte was authorized to enter into the Stipulation on Rosenthal's behalf. . . . Rosenthal has not met his burden of rebutting this presumption."

12. "[E]ven if Rosenthal were to succeed in showing that there was no express authority for Mr. Schulte to enter into this Stipulation, there certainly was implied authority, as a stipulation resolving discovery disputes is clearly within an attorney's general authority to bind his client in procedural matters arising during the course of the action."

13. "Rosenthal clearly ratified his attorney's conduct. According to ¶(2) of Rosenthal's own declaration, he read the June 5 Stipulation and Order on June 17, 1986. Although he claims he expressed his objection to the Stipulation and Order to his attorneys, Rosenthal never objected to Plaintiff, doesn't even pretend that he ever claimed that his attorneys lacked authority to sign the Stipulation, and neither Rosenthal nor his attorneys ever attempted to have the Stipulation vacated until after Judge Ross sanctioned his [violations] of it. Instead, Rosenthal (so he swears) spent over 100 hours in preparing answers to interrogatories in accordance with the Stipulation. (¶8 August 22, 1986 Declaration.) Rosenthal also prepared and served a Response to Notice to Produce Pursuant to Stipulation and Order (Exh. 46) and served responses to requests for admission (Exh. 50) by the deadline, July 2, established in that very Stipulation, asserting service was pursuant to June 5, 1986 Order."

14. "If this Court were to permit a stipulation to resolve discovery disputes to be vacated on the grounds that the attorney lacked authorization, it would herald the death knell for meet and confer orders. Who would want to confer if the results would be meaningless?"

15. "[T]he Stipulation arose by reason of the fact that Plaintiff had on calendar two motions filed pursuant to § 2034(a) and [was] seeking orders under that section."

16. "Much of Rosenthal's moving papers are devoted to a rehash of the motions before this Court on May 29 which were resolved by the June 5 Stipulation and Order and to a rehash of Rosenthal's arguments made before Judge Ross which Judge Ross rejected."

17. The "claim [of] Ms. Margolese's family problems as an excuse for Rosenthal's conduct [is the] same position [that] was put before Judge Ross and rejected by him as an excuse for the discovery violations by Rosenthal, and it should receive no greater weight here. More

justification" and that their actions were "frivolous," in "bad faith," and "solely intended to cause unnecessary delay."[14] The court awarded CEH

---

than that, while [Plaintiff's counsel has] repeatedly expressed . . . sympathy to Ms. Margolese, the facts are that she fully and actively participated in this case from not later than May 14, and in particular, during the discussions from May 29 through June 5 during which the terms of the June 5 Stipulation were negotiated, and immediately thereafter as well. Thus, this excuse is without merit."

18. The "complain[t] that the Interrogatories 'were riddled with overlapping subparts' . . . and were 'voluminous and convoluted' . . . are the very same contentions made to Judge Ross without success."

19. The "complain[t] that [Rosenthal] couldn't get an extension of time to answer the Interrogatories . . . is the exact same argument which Judge Ross rejected on August 29, 1986."

20. The "claim[s] that the sanctions imposed on August 29 were too harsh, that [Plaintiff's counsel] acted improperly in [previously] representing Rosenthal and that Rosenthal is ill . . . [were each] raised before Judge Ross, [and] each of them was rejected."

[14]The relevant findings made by Judge Ross in the December 16 Order are as follows:

"1. Plaintiff and Rosenthal, acting by and through their attorneys of record, intended to, and did, enter into a formal written Stipulation, the June 5, 1986 Stipulation to Resolve Discovery Disputes and Order (June 5 Stipulation and Order), setting forth all of the terms of their agreement regarding resolution of the then-outstanding discovery disputes between Plaintiff and Defendant.

"2. When the June 5 Stipulation and Order was presented to Rosenthal's attorney, Victor A. Schulte of the firm of Oring, Margolese & Schulte, for his review and signature, all 14 pages, including page 14 with the proposed Order, were stapled together.

"3. Victor A. Schulte saw and reviewed the 14th page containing [the] proposed order before he signed the June 5 Stipulation and Order.

"4. Page 14 included within the June 5 Stipulation and Order was not added after the Stipulation portion thereof was signed and initialled [sic] by Victor Schulte.

"8. The parties intended the June 5 Stipulation and Order to be filed with the Court, and for there to be an order issued on the Stipulation in accordance with the provisions thereof.

"10. The parties intended the June 5 Stipulation and Order to be binding and enforceable, and to be a resolution of the then-pending motions to compel discovery pursuant to Code of Civil Procedure § 2034(a) and of other discovery disputes for which motions to compel discovery pursuant to said section were about to be brought.

"11. The parties, and the Court, intended the Court's June 5 Order to be an order under Code of Civil Procedure § 2034(a), and it was an order under Code of Civil Procedure § 2034(a).

"12. Victor A. Schulte of Oring, Margolese & Schulte had actual and apparent authority on behalf of Rosenthal to enter into stipulations to resolve discovery disputes, and in particular, Victor A. Schulte's executing the June 5 Stipulation and Order *was within his actual and apparent authority as Rosenthal's attorney of record*. (Italics added.)

"13. Rosenthal *ratified* the June 5 Stipulation and Order, through his actions in accordance therewith, which actions include, without limitation, the June 19, 1986 Response to Notice to Produce Pursuant to Stipulation and Order, the July 1, 1986 Rosenthal Response To Requests For Admissions, Rosenthal's alleged efforts to prepare answers in accordance with the June 5, 1986 Stipulation and Order, and Rosenthal's failure to voice objection to the June 5 Stipulation and Order on the grounds that the Order was obtained by fraud at any time on or before August 29, 1986. (Italics added.)

"20. None of the following, either individually or collectively, either alone or combined with other facts, constitutes mistake, inadvertence, surprise or excusable neglect with respect to the issuance of the August 29, 1986 Order herein, [sic] . . . with respect to the issuance of the June 5, 1986 Order herein, or with respect to Rosenthal's attorneys' execution of the June

fees of $13,401 against Rosenthal, OMS, and the individual partners, Oring, Margolese, and Schulte.

Thereafter, Rosenthal filed a petition for a writ of mandate seeking to set aside the August 29 Order. This motion was summarily denied and his petition for review in the Supreme Court was also denied.

On January 6, 1987, OMS's motion to withdraw as Rosenthal's counsel was granted. Thereafter, OMS moved for contribution from Rosenthal with respect to the sanctions which had been imposed on November 20 and December 16, 1986 (see fn. 25, *post*). This motion was denied on March 9, 1987. On October 15, 1987, CEH filed a motion for summary judgment based on declarations and the evidentiary limitations imposed on Rosenthal

---

5, 1986 Stipulation to Resolve Discovery Disputes upon which the June 5, 1986 Order was based, or excuses Rosenthal's violating the June 5, 1986 Order herein or the Stipulation upon which it was based: 1. The nature, extent, length, wording, complexity or difficulty of Interrogatories and/or Requests for Identification and Production to which Defendant was required to respond under said Order and Stipulation;

"3. The physical and/or mental condition of Defendant and/or Rosenthal's attorneys from the commencement of this action through August 29, 1986;

"4. Leaves of absence and/or vacations of Rosenthal's attorneys prior to August 29, 1986;

"5. The June 26, 1986 and/or July 14, 1986 Orders of this Court denying Rosenthal's request for extensions of time;

"7. Plaintiff's extending or refusing to extend, time for Defendant to answer Interrogatories;

"9. Rosenthal's State Bar proceedings;

"10. Discovery, or any other aspects of LASC No. C 545108;

"11. Rosenthal's age.

"22. Prejudice, if any, suffered by Rosenthal arises from his own violations of June 5 Stipulation and Order.

"23. The August 29, 1986 Order does not exceed any legal bounds.

"24. The sanctions imposed by August 29, 1986 Order were not overbroad or excessively severe.

"25. Neither Rosenthal's violation of June 5 Stipulation and Order nor Rosenthal's violation of his discovery obligations (e.g., refusal to attend deposition, refusal to allow exhibits to be marked, refusal to answer any part of any interrogatory before Plaintiff's Motion was filed, refusal to answer all interrogatories even at time of filing Rosenthal's Moving Papers, refusal to answer any interrogatory without improper hedging, refusal to identify documents until after motion [was] made, and refusal to produce all documents) is the result of inadvertence, mistake, surprise or excusable neglect.

"26. Granting any of Rosenthal Motions would result in prejudice to Plaintiff.

"27. There is no good cause to reconsider the August 29, 1986 Order or Plaintiff's Motion or to revoke or set aside the August 29, 1986 Order.

"28. The Order of August 29, 1986 was not made as the result of any inadvertence, mistake, excusable neglect or surprise.

"29. The accusations against Richard Agay made by Rosenthal and his attorneys in the moving papers in support of the Rosenthal Motions are false, were known by Rosenthal's attorneys to be false at the time of filing Rosenthal's Moving Papers, and were made in bad faith, Rosenthal's bringing Rosenthal Motions and the accusations and claims in Rosenthal's Moving Papers are without substantial justification, and constitute bad faith actions and tactics that are frivolous and solely intended to cause unnecessary delay, and the positions taken by Rosenthal and his attorneys in such regard are totally and completely without merit."

by the August 29 Order. The motion was granted on December 21, 1987, and judgment was entered on February 16, 1988, awarding CEH $167,238.14 plus $37,066.03 in interest and costs.

## ISSUES

1. *Summary Judgment (Case No. B033315)* : Rosenthal contends that (1) the trial court abused its discretion in issuing the August 29 Order; therefore the summary judgment which was based upon that order should be reversed; (2) the Stipulation and the June 5 Order (and hence, the August 29 Order and the summary judgment which were based thereon) should be set aside because (a) the Stipulation was improper in that his then attorney had no authority to agree to issuance of a court order requiring performance of the Stipulation and (b) the resulting June 5 Order ultimately led to severe penalties following its violation, effectively amounting to a judgment against him; thus, his substantial rights were impaired "without his knowledge or consent"; and (3) the court erred in imposing $23,030 monetary sanctions against him as part of the August 29 Order.

2. *Post-August 29 Sanctions Against Rosenthal (Case No. B025896)* : Rosenthal contends that the trial court erred in imposing sanctions against him for bringing the motion to vacate the Stipulation and the June 5 Order and the motion to reconsider the August 29 Order. He argues that (1) if the August 29 Order and the Stipulation and the June 5 Order fall, then so must the sanctions; (2) even if sanctions were justified, they should have been imposed *solely* against his counsel, Schulte; and (3) even if sanctions were proper against him, the court (Judge Cardenas), in its award of sanctions included in the November 20 Order, failed to comply with the statutory requirement of detailing in writing the conduct or circumstances on which the sanctions were based.

3. *Sanctions Against OMS (Consolidated Case No. B024983)* : OMS contends, with respect to Case Nos. B024983 and B026834, that (1) "Counsel should not be placed in the position of making a decision to forego an obligation to a client to pursue diligently any possible meritorious motions on a unilateral decision that a particular motion may be considered by the judicial system to be 'frivolous' "; (2) Code of Civil Procedure section 128.5 denies counsel the opportunity to be heard when the attorney/client privilege prevents counsel from exonerating themselves.

With respect to Case No. B026937, OMS further contends that Code of Civil Procedure sections 882 and 883 apply to all joint and several money judgments including those awarded against an attorney and his client under Code of Civil Procedure section 128.5.

## DISCUSSION

We commence our consideration of these issues by noting that all parties agree that the standard of review is abuse of discretion. Rosenthal complains that discovery sanctions imposed by the August 29 Order were improper. The validity of those sanctions, which ultimately led to the entry of a summary judgment against Rosenthal on February 16, 1988, was at the heart of the dispute in the trial court and is critical to four of the five appeals before us.

■ It is settled that "The power to impose discovery sanctions is a broad discretion subject to reversal only for arbitrary, capricious or whimsical action. [Citations.] Only two facts are absolutely prerequisite to imposition of the sanction: (1) there must be a failure to comply [with a valid discovery order] . . . and (2) the failure must be wilful (Code of Civ. Proc., § 2034, subd. (d))." (*Calvert Fire Ins. Co.* v. *Cropper* (1983) 141 Cal.App.3d 901, 904 [190 Cal.Rptr. 593].)

Where those facts are found by the trial court to be true, such findings are entitled to deference on appeal. (*Flynn* v. *Superior Court* (1979) 89 Cal.App.3d 491, 496 [152 Cal.Rptr. 796]; *Cornwall* v. *Santa Monica Diary Co.* (1977) 66 Cal.App.3d 250, 252-253 [135 Cal.Rptr. 761].) The rule is the same even though the facts are established, as they were here, by declarations in support of a motion. (*Kroopf* v. *Guffey, supra,* 183 Cal.App.3d at p. 1356.) ■■■ This is particularly true where, as in this case, such findings are not even challenged by the appellants.[15]

■ In any event, in "the final analysis, the test on appeal is whether the lower court abused its discretion, and each case must be decided on its own facts, with the appellant having the burden of showing an abuse.

---

[15] Rosenthal, on appeal, does not expressly challenge the findings on which the August 29 Order was based or the findings made by either Judge Cardenas on November 20, 1986, or Judge Ross on December 16, 1986. They are thus binding on appeal. (See *Pick* v. *Santa Ana–Tustin Community Hospital* (1982) 130 Cal.App.3d 970, 978-979 [182 Cal.Rptr. 85].) While it is true that Rosenthal, in his reply brief, makes the conclusionary argument that "The evidence of [his] discovery violations was insufficient to support the finding in the August 29 . . . Order [that] 'Rosenthal refused to obey the Order of this Court dated June 5, 1986 . . . in refusing to identify documents and produce documents in the manner therein called for, in refusing to permit documents to be marked as exhibits at his deposition, in refusing to attend his deposition, and in refusing to answer interrogatories, respectively.' " However, as noted herein, the evidence supporting this finding by Judge Ross on August 29 is overwhelming. All that Rosenthal's reply brief does is reargue the factual issues resolved by the trial court. This is nothing more than an invitation to us to reweigh the evidence. For obvious reasons, we decline that invitation. (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]; *Alderson* v. *Alderson* (1986) 180 Cal.App.3d 450, 465 [225 Cal.Rptr. 610].)

[Citations.]" (*Scherrer* v. *Plaza Marina Coml. Corp.* (1971) 16 Cal.App.3d 520, 524 [94 Cal.Rptr. 85].) "A trial court's exercise of discretion will be upheld if it is based on a 'reasoned judgment' and complies with the '. . . legal principles and policies appropriate to the particular matter at issue.' [Citations.]" (*Bullis* v. *Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 815 [148 Cal.Rptr. 22, 582 P.2d 109, 7 A.L.R.4th 642].) The same standards, of course, also apply to the appeals by Rosenthal and OMS from the sanctions imposed by the November 20 Order and the December 16 Order.

### 1. *Summary Judgment (Case No. B033315)*

Rosenthal, in his appeal from the summary judgment, limits his attack on that judgment to three rulings by the trial court which he contends constituted an abuse of discretion. First, the issuance of the August 29 Order; second, the issuance of the June 5 Order (pursuant to the Stipulation); and, third, the award of sanctions as part of the August 29 Order. We discuss them in chronological order and find each to be without merit. Thus, we affirm the summary judgment.

### a. *June 5, 1986, Order*

■ Rosenthal asserts that the Stipulation and the June 5 Order (and the August 29 Order and summary judgment which ultimately followed and were based thereon) should be set aside "because it was an improper stipulation" by his attorney which impaired his "substantial rights without his knowledge or consent." He argues that he "never saw the Stipulation prior to its entry and neither knew nor consented to making the Stipulation into an order which could (and did) impair his right to defend the action on the merits."

However the record shows, as expressly found by both Judge Cardenas in his November 20 Order (see fn. 13, *ante*) and Judge Ross in his December 16 Order (see fn. 14, *ante*), that Rosenthal's attorneys had the actual and apparent authority on his behalf to enter into stipulations to resolve discovery disputes and that Schulte was acting within his authority as Rosenthal's attorney of record when he executed the Stipulation. At the time that Judge Cardenas ordered counsel to meet and confer on May 29, 1986, Rosenthal's attorney, apparently in order to avoid subjecting Rosenthal to a substantial risk of sanctions, decided to conclude the best terms he could reach with opposing counsel by entering into the Stipulation.

In *Linsk* v. *Linsk* (1969) 70 Cal.2d 272, 276-278 [74 Cal.Rptr. 544, 449 P.2d 760], the court held that an attorney has the " 'authority to enter into stipulations and agreements in all matters of procedure during the progress

of the trial.' . . . [¶] If counsel merely employs his best discretion in protecting the client's rights and achieving the client's fundamental goals, his authority to proceed in any appropriate manner has been unquestioned. On the other hand, if counsel abdicates a substantial right of the client contrary to express instructions, he exceeds his authority."

Here, Rosenthal's attorneys, in agreeing to the Stipulation, did not "relinquish a substantive right" and were acting well within their authority as his attorneys of record. They had an obligation to the court to resolve, on their own if possible, the discovery differences and they had an obligation to Rosenthal to prevent the imposition against him of costly sanctions. Certainly, the record does not suggest that Schulte signed the Stipulation "contrary to express instructions." Indeed, there is no claim that any term of the Stipulation was improper or unfair to Rosenthal. In fact, his only objection to the Stipulation is its acceptance of the very reasonable condition insisted on by CEH that it be approved and enforced by a court order. By the agreement that the Stipulation could be so enforced, Rosenthal's counsel did nothing more than agree to a routine and commonly accepted matter of procedure which was necessary or incidental to the management of the suit. This, Schulte clearly had the authority to do. (*Armstrong* v. *Brown* (1936) 12 Cal.App.2d 22, 28 [54 P.2d 1118].) That the resulting June 5 Order ultimately led to "death knell" sanctions and entry of a summary judgment against Rosenthal was due to his willful violations of its terms, not the fact that an order was agreed to or made.

Rosenthal does not cite one relevant authority to support his contentions on this issue.[16] If we were to give any credence to his argument, trial courts would no longer have the ability to resolve discovery disputes by any means other than formal, fully contested motions. The whole process of issuing "meet and confer" orders[17] and requiring the parties to resolve their discovery differences by agreement rather than by expensive and time-consuming motions would be undermined. Every dispute would have to be fully litigated. We can think of no reason whatever why such a result would be desirable. The negotiated resolution of such disputes is critical to the efficient

---

[16] Rosenthal's reliance on the three cases which he does cite is misplaced. *Blanton* v. *Womancare, Inc.* (1985) 38 Cal.3d 396 [212 Cal.Rptr. 151, 696 P.2d 645, 48 A.L.R.4th 109] and *Sanker* v. *Brown* (1985) 167 Cal.App.3d 1144 [213 Cal.Rptr. 768] each involved counsel's stipulation to binding arbitration which had the effect of depriving the client of his constitutional right to a jury trial. Obviously, such a substantive right could only be waived by the client. In *Linsk* v. *Linsk, supra,* 70 Cal.2d 272, counsel's improper stipulation to the submission of the case to a new judge after the prior judge's incapacity, before a decision could be rendered, forced a mistrial. The client had refused to consent to such submission and *both* the judge and opposing counsel were well aware of such client opposition.

[17] Now a statutory requirement included in the new Civil Discovery Act (Code Civ. Proc., § 2023, subd. (a)(9)).

management of crowded law and motion calendars. Of necessity, both the court and the opposing litigants must be able to rely upon the validity of stipulated resolutions of discovery disputes and to have them enforceable by order.

Finally, the record shows that Rosenthal himself ratified the Stipulation by his subsequent conduct. (See *Navrides* v. *Zurich Ins. Co.* (1971) 5 Cal.3d 698 [97 Cal.Rptr. 309, 488 P.2d 637, 49 A.L.R.3d 828].) At no time did he attempt to discharge his attorneys on the basis that their execution of the Stipulation was beyond their authority, and he did not communicate any objections to it during the months of June, July, or August of 1986. In addition, he submitted numerous papers to CEH and to the court acknowledging the Stipulation and the June 5 Order,[18] and he did not attempt to vacate that order until *after* Judge Ross had issued the August 29 Order. It is apparent that Rosenthal's conduct was such that CEH was entitled to and did rely on both the Stipulation and the June 5 Order. Consequently, Rosenthal is in no position to even claim that his counsel did not have the authority to enter into the Stipulation.

The June 5 Order was issued pursuant to the Stipulation. Having agreed to comply with the discovery commitments set forth in that order, Rosenthal cannot now complain as to its terms or be heard to argue that CEH's discovery was "massive and complex" and "demanding" and "detailed." Nor can he now argue that the June 5 Order was made without subjecting the discovery commitments contained in the Stipulation to "judicial scrutiny." The very purpose of an order to meet and confer is to obtain a negotiated resolution of a discovery dispute without having to expend judicial time to sort out which party is correct and what relief should be granted. What the court seeks is an agreement by the parties which resolves the dispute. There is no requirement that the court thereafter conduct any in depth review of such agreement or make any independent inquiry into its terms.

We conclude that Rosenthal is bound by the Stipulation, and the June 5 Order was properly issued.

---

[18] On June 30, 1986, he signed verified responses to request for admissions which referred to the June 5 Stipulation and Order.

On August 19, 1986, he verified responses to Request to Identify Documents, Papers, Books, etc., which specifically referred to the Order both in the caption and body.

It appears that there are at least 22 different papers filed or served between June 5 and August 29 and 11 letters from June 5 through July 14, 1986, which referred to the June 5 order.

In addition, Rosenthal, in a declaration, swore that he spent over 100 hours in preparing responses to discovery in accordance with the Stipulation.

Rosenthal also sought leave of court to modify the Stipulation and June 5 Order, seeking an extension of time in which to fulfill his discovery obligations thereunder.

### b. *August 29, 1986, Order*

 Rosenthal contends that the trial court abused its discretion in "condoning and in fact rewarding" CEH's actions in pursuing "discovery not as a fact-finding device, but as a short-cut to a judgment other than on the merits" by issuing the August 29 Order which ultimately resulted in the summary judgment. Again, Rosenthal is attempting to relitigate the merits of CEH's methods of discovery by arguing that its volume and complexity was "totally unnecessary" and "out of all proportion" to a "legitimate fact-finding objective." As already explained, this argument is substantially undercut by the Stipulation and the June 5 Order in which Rosenthal, by and through his counsel, expressly agreed to all such discovery.

In addition, the record clearly establishes that Rosenthal violated the June 5 Order not only by refusing to cooperate with the taking of his deposition but also by repeatedly failing to answer interrogatories or produce requested documents. In response to these numerous violations, CEH filed the August 14 motion seeking relief under Code of Civil Procedure section 2034, subdivisions (b)(2) and (d).

In his August 29 Order, after the hearing on CEH's motion, Judge Ross made a number of important findings of fact, none of which is here disputed by Rosenthal. Judge Ross expressly found that "Rosenthal refused to obey the Order of this Court dated June 5, 1986 made under § 2034 (a) in that he violated ¶¶ 2, 2.3, 3 and 4 of said Order in refusing to identify documents and produce documents in the manner therein called for, in refusing to permit documents to be marked as exhibits at his deposition, in refusing to attend his deposition, and in refusing to answer interrogatories, respectively."

Judge Ross also found "that Rosenthal willfully failed to appear for the taking of his deposition and willfully failed to answer interrogatories." He finally concluded "that the above-stated conduct and Rosenthal's and Rosenthal's attorneys' attempt to avoid the requirements of the June 5, 1986 Order by making an improper ex parte application and a motion (filed herein June, 1986) and [their] forcing Plaintiff to obtain ex parte Order of July 3, 1986 in order to maintain discovery priority granted under June 5, 1986 Order, each constitute bad faith action and tactics that are frivolous and solely intended to cause unnecessary delay, and the positions taken . . . in such regards are totally without merit."

 Discovery sanctions "should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery." (*Deyo* v. *Kilbourne* (1978) 84 Cal.App.3d

771, 793 [149 Cal.Rptr. 499].) ■■ Here, the Court granted relief which was specifically related to each violation by Rosenthal of the June 5 Order. For example, since Rosenthal had willfully failed to answer interrogatories, the facts solicited by those interrogatories were deemed established against Rosenthal. He had refused to properly identify and produce documents, therefore, the court ordered that he was precluded from using the requested documents. He had refused to allow his deposition to go forward, therefore, it was specifically ordered that Rosenthal could not testify.

Considering Rosenthal's repeated and flagrant violations of the June 5 Order, it cannot be said the sanctions imposed by the court were unwarranted or too harsh. Rosenthal was aware of the potential consequences of his violations of that order and clearly, "repeated warnings would have been futile."[19] (See *County of El Dorado* v. *Schneider* (1987) 191 Cal.App.3d 1263, 1277 [237 Cal.Rptr. 51].) However severe their ultimate consequences, these sanctions were an appropriate response to Rosenthal's repeated and willful violations of a valid court order. A trial court in circumstances such as these, is not required to further tolerate such behavior. There was clearly no abuse of discretion.

c. *Monetary Sanctions Imposed on August 29, 1986*

■■ Rosenthal contends that the award of $23,030 attorney fee sanctions was an abuse of discretion and "excessive." He argues that his discovery violations were neither substantial nor willful; therefore, it was error to impose such sanctions against him. As discussed, *supra,* Rosenthal's violations were both numerous and substantial, as well as willful. The court specifically found that Rosenthal "willfully failed to appear for the taking of his deposition and willfully failed to answer interrogatories"; that he and his attorneys attempted to avoid the requirements of the June 5 Order by making "an improper ex parte application and a motion" and he and his

---

[19]This is not the first time Rosenthal has behaved in such fashion. As this court observed in *Day* v. *Rosenthal* (1985) 170 Cal.App.3d 1125, 1167, 1172-1173 [217 Cal.Rptr. 89], "Rosenthal's performance was, basically, the same in each case. His replies were essentially nonresponsive or uninformative. He was ordered to provide further answers. Again, many of his answers were inadequate or nonresponsive. After what Rosenthal euphemistically calls 'some initial fencing over interrogatories' the trial court concluded that Rosenthal's failure to answer was willful. . . . The storm of demands for discovery made by Rosenthal after five years of thumbing his nose at efforts to get him to respond to discovery requests alerted the trial court to take a hard look at what was happening."

Again, in *Doanbuy Lease and Co.* v. *Melcher* (1971) 83 N.M. 82 [488 P.2d 339], the New Mexico Supreme Court stated, "How many times do Doanbuy and its president [Rosenthal] need to be told to submit to depositions? We are much too concerned with the orderly and expeditious flow of cases through our trial courts to condone, even indirectly or by implication, Mr. Rosenthal's conduct. The courts of New Mexico have neither the time nor the inclination to indulge such querulous and petulant antics by civil litigants."

attorney forced CEH to obtain an ex parte order to maintain discovery priority; and that each of these constituted "bad faith action and tactics that [were] frivolous and solely intended to cause unnecessary delay . . . ." As already noted, Rosenthal does not even claim that these findings are not supported by the evidence. Clearly, the award of attorneys' fees was proper under Code of Civil Procedure section 2034. An innocent litigant should never be forced to bear alone the financial burden of seeking legal redress for repeated willful violations of valid court orders.

Rosenthal also argues that the trial court erroneously included in the amount awarded the sum of $7,370 for the discovery motions which preceded the Stipulation and $3,006 for conferring and drafting the Stipulation and June 5 Order. In awarding the $23,030 as attorneys' fees the court gave no explanation as to how it arrived at this particular figure. It appears, however, that this is the amount requested in CEH's motion to strike Rosenthal's answer, and is clearly supported by the record.[20]

Contrary to Rosenthal's argument, the language of the Stipulation[21] implying a waiver of sanctions did not apply in the event of a *subsequent* failure to perform the discovery commitments set out in the Stipulation. The language used was obviously meant to be only a waiver of sanctions as to all discovery violations that occurred before the Stipulation was signed, not to those violations occurring afterwards. Clearly, Rosenthal's conduct justified an award of substantial sanctions. The amount awarded ($23,030) was reasonable. There was no abuse of discretion.

### 2. *Post-August 29 Sanctions Against Rosenthal (Case No. B025896)*

On November 20, 1986, the trial court denied Rosenthal's motion to vacate the Stipulation and the June 5 Order and imposed sanctions of

---

[20] In the declaration of Richard Agay, a member of the CEH law firm, a breakdown of expenses was given as follows: Preparation of Motion to compel answers to the First Set of Interrogatories ($1,620); Motion seeking protective order and stay of Rosenthal's discovery order ($5,805); Motions to compel answers to the second set of interrogatories ($945); These three separate motions which ultimately led to the Stipulation and the June 5 order total *$8,370* (in his declaration Mr. Agay only claimed $7,370 for this category, apparently due to a mathematical error in Rosenthal's favor); Conference and draft of June 5 Stipulation: *$3,006*; Correspondence and preparation of proposed stipulation after Rosenthal's attorneys threatened not to comply with the June 5 Order: *$1,224*; Preparation of opposition to Rosenthal's motion to obtain ex parte order modifying the June 5 Stipulation and Order: *$1,962*; Preparation of ex parte application to retain discovery priority: *$1,944*; General research: *$270*; and Preparation of motion to strike answers, etc.: *$7,254*. This totals $24,030 (the $1,000 difference from the amount actually claimed and awarded is due to the mathematical error described above).

[21] In paragraph 9.3, the Stipulation provided that "Except as otherwise herein provided, all pending motions are disposed of and no sanctions shall be awarded to either party." There was no other provision in the Stipulation mentioning either the disposition of pending motions or sanctions.

$14,580 upon Rosenthal, and his attorney, Schulte, "jointly and severally." On December 16, 1986, after Rosenthal had taken off calendar his motion for reconsideration of the August 29 Order, the trial court imposed sanctions of $13,401 upon Rosenthal, OMS, and the individual partners, Oring, Margolese and Schulte for filing that motion.

In this appeal Rosenthal seeks reversal of that portion of the November 20 Order and the December 16 Order which imposed sanctions against him under Code of Civil Procedure section 128.5[22] As we have already mentioned, he makes three arguments: (1) if the August 29 Order and the June 5 Order fall, so do the sanctions for seeking to have those orders set aside; (2) even if the sanctions were justified, they should not have been imposed on him since the acts for which the sanctions were imposed were the acts of Schulte, not himself; and (3) even if the $14,500 in sanctions imposed by Judge Cardenas's November 20 Order were proper, the trial court failed to detail in writing the conduct or circumstances justifying them.

The first argument need not detain us. We have already concluded that the Stipulation and the June 5 Order were valid and enforceable and the August 29 Order was properly issued by the trial court. Nothing further need be said on this issue. Similarly, there is no merit to Rosenthal's second argument that the sanctions should have been imposed only upon Schulte, and not upon him. The imposition of sanctions on Rosenthal was entirely justified. The record before us demonstrates very active involvement by Rosenthal in the various acts of misconduct which caused the court to impose those sanctions.

After the August 29 Order was issued, OMS advised Rosenthal that it would not be able to prepare a motion for reconsideration in a timely fashion and asked if he could obtain the assistance of another attorney. Rosenthal agreed and retained Andrew J. Velcoff to assist OMS. According to Velcoff's declaration, he met with attorneys Margolese and Schulte, as well as Rosenthal, to discuss the case and to learn what needed to be done. They "each" explained to him their version of the facts, indicating that the August 29 Order had been made as a result of the trickery and deceit of

---

[22] Code of Civil Procedure section 128.5 provides in part:

"(a) Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay. . . .

"(b) For purposes of this section: (1) 'Actions or tactics' include, but are not limited to, the making or opposing of motions or the filing and service of a complaint or cross-complaint. . . .

"(2) 'Frivolous' means (A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party."

opposing counsel and as a result of their own mistake, inadvertence, and excusable neglect.

On September 8, 1986, the moving papers supporting the motion to reconsider and revoke the August 29 Order, which Velcoff had prepared, were filed. On October 15, 1986, Rosenthal filed his moving papers in support of motions to vacate the Stipulation and the June 5 Order.

Most of the grounds and bases for these motions were in the declarations which listed numerous excuses for Rosenthal's violations of the June 5 Order and which by August 29, *had already been expressly rejected, determined to be false or both.*[23] In fact, affixed to these motions was the same declaration Rosenthal had filed in opposition to the original motion heard by Judge Ross on August 29.

With respect to the motion to vacate the Stipulation and the June 5 Order, Judge Cardenas, on November 20, 1986, found that "even if Rosenthal were to succeed in showing that there was no express authority for Mr. Schulte to enter into this Stipulation, there certainly was implied authority, as a stipulation resolving discovery disputes is clearly within an attorney's general authority to bind his client in procedural matters arising during the course of the action. . . . Rosenthal clearly ratified his attorney's conduct. According to ¶ (2) of Rosenthal's own declaration, he read the June 5 Stipulation and Order on June 17, 1986. . . [he] never objected to Plaintiff, doesn't even pretend that he ever claimed that his attorneys lacked authority to sign the Stipulation, and neither Rosenthal nor his attorneys ever attempted to have the Stipulation vacated until after Judge Ross sanctioned his [violations] of it. Instead, Rosenthal (so he swears) spent over 100 hours in preparing answers to interrogatories in accordance with the Stipulation. . . . Rosenthal also prepared and served a Response to Notice to Produce Pursuant to Stipulation and Order (Exh. 46) and served responses to requests for admission (Exh. 50) by the deadline . . . established in that very Stipulation (asserting service was pursuant to June 5, 1986 Order)."

As already noted, the motion to reconsider the August 29 Order was taken off calendar by Rosenthal shortly after November 20, 1986, but CEH's sanction request, in response to said motion, remained on calendar and was considered by Judge Ross on December 3 and December 16, 1986. He determined that "The accusations against Richard Agay made by Rosenthal and his attorneys in the moving papers . . . are false, were known by Rosenthal's attorneys to be false at the time of filing Rosenthal's moving papers, and were made in bad faith . . . without substantial justification,

---

[23] See footnotes 13 and 14, *ante.*

and constitute bad faith actions and tactics that are frivolous and solely intended to cause unnecessary delay, and the positions taken by Rosenthal and his attorneys in such regard are totally and completely without merit."

█ "In accordance with the usual rule on appeal, the judgment or order of the trial court is presumed correct. All intendments and presumptions are indulged to support it on matters to which the record is silent, and error must be affirmatively shown. [Citation.] Where the evidence is in conflict, the appellate court will not disturb the findings of the trial court." (*Ellis* v. *Roshei Corp.* (1983) 143 Cal.App.3d 642, 645, fn. 2 [192 Cal.Rptr. 57].) █ Here, as the trial court found, Rosenthal's attempts to overturn the Stipulation and the June 5 Order, and the August 29 Order based thereon, were clearly frivolous and were brought in bad faith. From the record, there can be no doubt that, either alone or with attorney Velcoff, Rosenthal made the decisions and directed the preparation of these motions.

This conclusion is reinforced in the record by several subsequent disclosures. In papers served December 17, 1986, OMS moved to withdraw as attorney of record. In a declaration attached thereto, Margolese stated that the motion to reconsider (the August 29 Order) was made "upon grounds which [she] felt were so meritless and frivolous that [she] refused to file the Motion. . . . Rosenthal being an attorney himself chose to go ahead with the Motion for Reconsideration nevertheless and hired independent counsel (Andrew Velcoff) . . . ." On January 5, 1987, she filed a declaration stating that Rosenthal had "refus[ed] to cooperate in discovery . . . refus[ed] to follow legal advise [*sic*] and insist[ed] time after time that this firm [assist] in his efforts to abuse the legal system. . . ."

Later, on February 27, 1987, during oral argument at the hearing on the motion for partial reconsideration of the December 16 order, Margolese acknowledged that when the motion to reconsider was filed she "felt that the motion was frivolous . . . [and] not only . . . meritless but . . . ridiculous . . . ."

█ Rosenthal's third and final contention with respect to the post-August 29 sanctions is that Judge Cardenas erred in adopting and incorporating, as the court's specification of reasons for the award of fees in the November 20 Order, plaintiff's Memorandum of Points and Authorities filed November 19, 1986. Rosenthal argues that by doing so, the court violated the requirement of Code of Civil Procedure section 128.5, subdivision (c) which states, "An order imposing expenses shall be in writing and shall recite in detail the conduct or circumstances justifying the order."

The November 20 Order did expressly incorporate the specification of reasons set forth in CEH's opposing papers filed on November 19, 1986. In so doing, Judge Cardenas stated, "The conduct, circumstances and legal arguments so meticulously set forth therein provides the basis for the Court's conclusion (finding) that the instant motions were brought in bad faith and were totally and completely without merit." (See fn. 13, *ante*.) ▮ Although section 128.5, subdivision (c) requires the court to set forth the specific circumstances giving rise to an award of sanctions, there is no prohibition against the court incorporating by reference papers which adequately set forth the conduct, circumstances and legal arguments which provide the bases for the court's conclusions.

"The purpose of section 128.5's provision for a recitation of the facts justifying a sanctions order is to fulfill the 'rudiments' of due process required for governmental imposition of a penalty upon an attorney or party—both for due process' own, constitutional sake and to ensure that the power conferred by the statute will not be abused. [Citations.] Moreover, in some cases the court's recitation will be an invaluable aid to a reviewing court determining whether the trial court abused its discretion in awarding sanctions. [Citation.]" (*Lavine* v. *Hospital of the Good Samaritan* (1985) 169 Cal.App.3d 1019, 1029 [215 Cal.Rptr. 708].) This purpose is equally served whether the court itself prepares the order, directs counsel to do so or simply incorporates, as the court did here, some specific portion(s) of a party's papers. Had the Legislature intended to require the court to directly prepare its own order when imposing a sanction under Code of Civil Procedure section 128.5, it certainly knew how to do so (see, e.g., Code Civ. Proc., § 657).

▮ In any event, the court also stated that it found "The Court's order of June 5, 1986 was signed pursuant to a stipulation—entered into between the parties acting through their respective counsel—*for such an Order*. [¶] The Court concludes and finds that *all fourteen pages*[24] of the 'Stipulation to Resolve Discovery Disputes and Order' were reviewed by counsel for defendant, Victor A. Schulte, before he signed it, thus binding his client. . . ."

---

[24] In the Motion to Vacate the Stipulation and the June 5 Order, it was asserted that of the "14-page Stipulation, only 13 pages were seen, approved and initialed by both counsel. . . . [¶] Instead, plaintiff's counsel added, unbeknownst to defense counsel, MR. SCHULTE, an *additional page* (Page 14) which was *not* attached nor shown to defense counsel and which was in effect a Court 'Order,' which plaintiff's counsel unfairly and improperly utilized as a binding Order of the Stipulation's provisions . . . . Defense counsel had no reason to believe that any additions were added. . . ." As we discuss below, it was this claim which Judge Cardenas found, on November 20, 1986, to be "a pernicious prevarication" and a "pure fabrication."

Therefore, it appears that Judge Cardenas's order itself, aside from expressly incorporating statements from another document, included independent reasons showing the motion to vacate to be frivolous and made in bad faith. There was no error in the imposition of these sanctions.

### 3. *Sanctions Against OMS (Consolidated Case No. B024983)*

In these consolidated cases OMS has brought three separate appeals from three different judicial decisions on related matters. The first order appealed from is Judge Cardenas's November 20 Order which imposed sanctions of $14,500. The second is Judge Ross's imposition of sanctions ($13,401) in the December 16 Order. The third is Judge Lewin's order of March 9, 1987, in which he denied OMS's motion for contribution from Rosenthal for the attorneys' fees and sanctions imposed by the previous orders of Judges Cardenas and Ross and which OMS had paid in their entirety. (See fn. 25, *post.*)

According to Margolese, OMS initially had refused Rosenthal's request to file the motion for reconsideration of the August 29 Order. Rosenthal then retained Velcoff to prepare the motion and requested Schulte and herself to cooperate with Velcoff. Later, independent of OMS, Velcoff and Rosenthal determined that there would not only be a motion for reconsideration but also a motion to vacate under section 473. When she noticed that the law firm's name was on the pleadings along with Velcoff's name, she protested to Rosenthal. Because of a time problem, it was agreed that OMS would file the motions unchanged and Rosenthal and Velcoff would correct the record before the Court within the next day or two. After the motions were filed, Velcoff reneged on this promise and refused to execute the appropriate substitution of attorneys.

Velcoff maintains that he was not retained to represent Rosenthal as independent counsel, but only as a "ghost writer." Velcoff, in his declaration, states that his role was "ministerial in doing research (along with Vana Margolese), drafting and putting together documents"; that at no time did Schulte or Margolese indicate that they opposed the filing of the motion; that Margolese's statement that he agreed to substitute in as counsel is "absolutely untrue"; that Velcoff later entered into a letter agreement with OMS limiting his participation in the motions retrospectively; and that Rosenthal refused to sign any agreement regarding Velcoff's status.

The monetary sanctions imposed by these two orders were promptly paid to CEH.[25] On January 6, 1987, the court granted OMS the right to withdraw as attorney of record. On February 27, 1987, a motion for partial reconsideration of the sanctions and the issue of joint and several liability was heard and denied. The court concluded that OMS's primary duty was to the legal system and that the motions should not have been filed despite the client's insistence. Within 10 days after payment to CEH, OMS filed 2 motions for contribution pursuant to Code of Civil Procedure sections 882 and 883. These motions were denied.

OMS asserts two principal arguments in support of its position in these consolidated appeals. The first addresses itself to the two sanction orders; the second responds to the denial of the contribution motion.

a. *The Attorney's Ethical Dilemma*

OMS contends that there is a "Constitutional flaw" in Code of Civil Procedure section 128.5 since it allows sanctions to be awarded against an attorney in those "rare but not unusual" situations where an attorney cannot exonerate himself without breaching his ethical obligations to his client. OMS argues that when the sanctions were awarded against them they could not have withdrawn from the case without adversely affecting Rosenthal's position, and that the attorney/client privilege prevented them from being able to exonerate themselves. They assert that "counsel should not be placed in the position of making a decision to forego an obligation to a client to pursue diligently any possible meritorious motions on a unilateral decision that a particular motion may be considered by the judicial system to be 'frivolous.' "[26]

Under Business and Professions section 6068, "It is the duty of an attorney: . . . [¶] (c) To counsel or maintain such actions, proceedings, or defenses only as appear to him or her legal or just, except the defense of a person charged with a public offense. [¶] (d) To employ, for the purpose of maintaining the causes confided to him or her such means only as are *consistent with truth,* and never to seek to mislead the judge or any judicial officer by an artifice or *false statement of fact or law.* " (Italics added.) (See 1 Witkin, Cal. Procedure (3d ed. 1985) Attorneys, § 400, at pp. 452-453.)

---

[25] On December 22, 1986, Schulte paid CEH $14,673.18, and on December 23, 1986, OMS paid CEH $13,446.64.

[26] With respect to this argument, it is important to remember, and we here again emphasize, that Margolese, one of the partners of OMS so actively involved in this matter, has admitted in declarations filed with the trial court that the motion to reconsider the August 29 Order was frivolous and without merit; and that Rosenthal had refused to cooperate in discovery or follow OMS's legal advice but rather had insisted (apparently successfully) that OMS "[assist] in his efforts to abuse the legal system."

Rule 7-105 of the Rules of Professional Conduct of the State Bar of California[27] in part provided that "In presenting a matter to a tribunal, a member of the State Bar shall: [¶] (1) Employ . . . such means only as are consistent with truth, and shall not seek to mislead the judge, judicial officer or jury by an artifice or false statement of fact or law. . . ." As OMS now apparently recognizes, it is clear that an attorney must withdraw from a case when his client demands tactics that the attorney concludes are frivolous or breach the attorney's obligation to the legal system. (Rules of Prof. Conduct, rule 2-111;[28] Bus. & Prof. Code, § 6068, subd. (b).)

On November 20, 1986, after hearing the motion to vacate the Stipulation and the June 5 Order, Judge Cardenas, by his express adoption and incorporation of CEH's moving papers and supporting points and authorities, found that "all fourteen pages of the Stipulation were reviewed by Schulte before he signed it"; that Rosenthal's attorneys' story that when they signed the Stipulation it was not stapled together or that the Order page was missing "is a total prevarication"; that Rosenthal's attorneys' story is a "recent fabrication"; that Rosenthal's entire motion is premised upon the charge of fraud by CEH in supposedly "sneaking an additional page into the Stipulation after it had been signed. . . . That premise is a pernicious prevarication"; and that the basis for the claim is "pure fabrication." The record shows that there were at least *eleven* separate factual bases supporting these findings of falsehoods relied on by CEH and expressly adopted by the court.

It does not end there. After considering CEH's request for sanctions arising from Rosenthal's motion to reconsider the August 29 Order, Judge Ross, on December 16, 1986, stated that the primary basis for the motion was "an out-and-out lie." Specifically, he found that "The accusations against Richard Agay made by Rosenthal and his attorneys in the moving papers in support of the Rosenthal Motions are false, were known by Rosenthal's attorneys to be false at the time of filing Rosenthal's Moving Papers, and were made in bad faith . . . the accusations and claims . . . are without substantial justification, and constitute bad faith actions and tactics that are frivolous and solely intended to cause unnecessary delay . . . the positions taken . . . are totally and completely without merit."

Contrary to OMS's arguments, they did not face an ethical dilemma. An attorney does not have an ethical obligation to his client to perjure himself or to file a knowingly frivolous or bad faith motion. Schulte and Margolese

---

[27] This was the way the rule read on the dates relevant to this matter. Substantially the same rule, with but minor editorial modification, is now included in the revised rules (effective May 27, 1989) as Rule 5-200.

[28] For the current version under the revised rules, see rule 3-700, subdivisions (B) and (C).

did not have an ethical obligation to Rosenthal to sign or file false declarations. To the contrary, OMS had an affirmative duty to refuse to falsely accuse CEH of committing fraud. (*Davis* v. *State Bar* (1983) 33 Cal.3d 231, 239-240 [188 Cal.Rptr. 441, 655 P.2d 1276]; *Reznik* v. *State Bar* (1969) 1 Cal.3d 198, 205 [81 Cal.Rptr. 769, 460 P.2d 969, 40 A.L.R.3d 161]; *McMahon* v. *State Bar* (1952) 39 Cal.2d 367, 370 [246 P.2d 931].)

This conduct goes far beyond maintaining client confidences or refraining from jeopardizing a client's position. Here, OMS willfully and knowingly made false declarations and statements in an attempt to deceive the court. They cannot excuse such behavior by claiming that their client had "insisted" upon it. If Rosenthal demanded such action, OMS had no choice but to immediately withdraw from the case. (Rules Prof. Conduct, rules 2-111 (B) and (C)(1)(a); *Cosenza* v. *Kramer* (1984) 152 Cal.App.3d 1100, 1103 [200 Cal.Rptr. 18]; *Metzger* v. *Silverman* (1976) 62 Cal.App.3d Supp. 30, 39 [133 Cal.Rptr. 355].)

In this situation, the sanctions against OMS and the individual attorneys were not based upon any speculation or conjecture by the trial court. Both judges specifically found that the OMS's claim of fraud against CEH was blatantly false. This is not a case where their client misled OMS but one where they themselves knowingly lied to the court, acquiesced in their client's demands, and actively supported frivolous motions. An award of sanctions against the attorneys in this situation was absolutely mandatory. This is an example of one of the "clearest of cases." The arguments made here by OMS to justify their conduct, and thus defeat the sanctions ordered by the trial court, rest upon a lamentably incorrect understanding of a lawyer's legal and ethical responsibilities. The flaw does not, as OMS asserts, lie in Code of Civil Procedure section 128.5, but rather in the behavior of counsel.

b. *Right to Judgment Debtor Contribution*

OMS also contends that Code of Civil Procedure sections 882[29] and 883[30] apply to all joint and several money judgments including those

---

[29] Code of Civil Procedure section 882 provides in relevant part: "If two or more judgment debtors are jointly liable on a money judgment: [¶] (a) A judgment debtor who has satisfied more than his or her due proportion of the judgment, whether voluntarily or through enforcement procedures, may compel contribution from another judgment debtor who has satisfied less than his or her due portion of the judgment. . . ."

[30] Code of Civil Procedure section 883 states: "(a) A judgment debtor entitled to compel contribution or repayment pursuant to this chapter may apply on noticed motion to the court that entered the judgment for an order determining liability for contribution or repayment. The application shall be made at any time before the judgment is satisfied in full or within ten days thereafter.

awarded against an attorney and his client under Code of Civil Procedure section 128.5. Consequently, the court erred in denying their motion to force Rosenthal to reimburse OMS, in whole or in part, for the attorney fee sanctions awarded against them. With this contention, we agree.

Rosenthal argues that persons upon whom sanctions are imposed under section 128.5 are not "judgment debtors" within the meaning of Code of Civil Procedure sections 882 and 883, and, therefore, are not subject to contribution. In deciding whether or not these sections are applicable to orders as well as formal judgments, the key determination is whether the award of sanctions is final and appealable. If it is, then, contrary to Rosenthal's argument, the rules regarding contribution apply and the label "judgment" or "order" is not material. Where a court has imposed a monetary sanction by an order which is final and appealable, no good reason exists not to treat that order as though it were a judgment for purposes of Code of Civil Procedure sections 882 and 883. Such an order has all the indicia of a judgment except that it relates to a collateral matter.

 It is true that generally, "an order is not a final determination of the cause but an intermediate ruling of some kind, usually a decision on a motion." (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 3, p. 454.) However, that portion of the order imposing monetary sanctions pursuant to section 128.5 does constitute " 'a *final* order on a collateral matter directing the payment of money.' " (*I. J. Weinrot & Son, Inc.* v. *Jackson, supra,* 40 Cal.3d 327, 331, italics added); see also *Bauguess* v. *Paine* (1978) 22 Cal.3d 626, 634, fn. 3 [150 Cal.Rptr. 461, 586 P.2d 942]; *Ellis* v. *Roshei Corp., supra,* 143 Cal.App.3d 642, 645, fn. 3; *Wisniewski* v. *Clary* (1975) 46 Cal.App.3d 499, 502 [120 Cal.Rptr. 176]). Therefore, OMS, and the named partners, were "judgment" debtors within the meaning of sections 882 and 883 and the court erred in denying OMS's motion for contribution.

According to the Law Revision Commission comment, 1982 Addition, "Section 882 . . . permits contribution where a joint judgment debtor satisfies a disproportionate share of a money judgment, or satisfies the judgment as a surety, whether by voluntary payment or involuntarily through levy upon and sale of property, wage garnishment, examination proceedings, or some other procedure. This section does not determine the proportionate shares of the obligation on a judgment; the joint judgment debtor's

"(b) The order determining liability for contribution or repayment entitles the judgment debtor to the benefit of the judgment to enforce liability, including every remedy that the judgment creditor has against the persons liable, to the extent of the liability.

"(c) Nothing in this section limits any other remedy that a judgment debtor entitled to contribution or repayment may have."

share depends on the circumstances of the case." We construe this comment to support our view that where there is no apportionment of joint liability made by the judgment or order itself, or dictated by the terms of some underlying instrument, such as a partnership agreement (see, e.g., *Woolley v. Seijo* (1964) 224 Cal.App.2d 615, 621-622 [36 Cal.Rptr. 762]), then the "due proportion" of the liability of the several judgment debtors shall be calculated on a pro rata basis.

On November 20, 1986, the trial court imposed sanctions of $14,500 upon Schulte and Rosenthal, "jointly and severally." There are clearly only two persons subject to the order and, absent a different apportionment by the court, they should, *as between themselves,* share the burden equally. No factual issue as to apportionment arises. Schulte is entitled to a one-half contribution from Rosenthal of $7,250.

On December 16, 1986, the trial court imposed sanctions of $13,401 upon Rosenthal, OMS, and the individual partners, Oring, Margolese and Schulte. Since all three partners were named in addition to the law firm, it is unclear to us whether the trial court intended that all the "lawyers" should constitute one entity and Rosenthal the other, or whether it intended that each named individual or entity be considered separately as a different debtor. This issue must therefore be remanded to the trial court for a determination of such intent. The matter can be resolved at the hearing on OMS's motion for contribution.

SANCTIONS ON APPEAL

1. *Sanctions Payable to CEH*

 Sanctions for a frivolous appeal are being sought by CEH in connection with Case Nos. B033315 and B025896 against both Rosenthal and his counsel on appeal, Ronald P. Kaplan (Kaplan). In consolidated Case No. B024983, CEH, as real party in interest, is also seeking sanctions against OMS.

Under Code of Civil Procedure section 907, "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." California Rules of Court, rule 26(a) provides in pertinent part, "Where the appeal is frivolous or taken solely for the purpose of delay . . . the reviewing court may impose upon offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require."

 The twin standards for determining when an appeal is frivolous were considered by the Supreme Court in *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179]. That opinion guides and controls our resolution of CEH's request for sanctions.

"The California cases discussing frivolous appeals provide a starting point for the development of a definition of frivolous. Those cases apply standards that fall into two general categories: subjective and objective. [Citation.] The subjective standard looks to the motives of the appellant and his or her counsel. Thus, in *Simon* v. *Bemis Bros. Bag Co.* (1955) 131 Cal.App.2d 378, 382 [280 P.2d 528], the court rejected a claim that an appeal was frivolous, noting that counsel presented his argument in a 'courteous and gracious manner' and seemed to believe 'fervently' that he might succeed on the merits. Similarly, the courts have frequently looked at the 'good faith' of the appellant and have penalized appellants where the only purpose of the appeal was delay. [Citations.]

"The objective standard looks at the merits of the appeal from a reasonable person's perspective. 'The problem involved in determining whether the appeal is or is not frivolous is not whether [the attorney] acted in the honest belief he had grounds for appeal, but whether any reasonable person would agree that the point is totally and completely devoid of merit, and, therefore, frivolous.' [Citations.] [¶] The two standards are often used together, with one providing evidence of the other. Thus, the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay. [Citations.] [¶] Both strands of this definition are relevant to the determination that an appeal is frivolous. An appeal taken for an improper motive represents a time-consuming and disruptive use of the judicial process. Similarly, an appeal taken despite the fact that no reasonable attorney could have thought it meritorious ties up judicial resources and diverts attention from the already burdensome volume of work at the appellate courts. *Thus, an appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit.* [Citation.]" *In re Marriage of Flaherty, supra,* 31 Cal.3d at pp. 649-650.) (Italics added.)

 Here, we have no trouble concluding that Rosenthal has prosecuted these appeals for no other reason than to harass and delay CEH. That conclusion is amply supported by the total lack of merit which we have

found in the arguments advanced here by Rosenthal,[31] as well as the conduct in which he engaged in the trial court which he seeks, by such arguments, to here justify and which led two different trial judges to conclude that harassment and delay were his only motives.

We are not at all impressed by the argument that since Rosenthal had paid the judgment (and OMS had paid the sanctions), Rosenthal's motive could not be delay as there was nothing to delay. While it is true that CEH has received full payment, an appellant may not insulate himself from frivolous appeal sanctions by the mere act of satisfying the judgment. Delay, as that term is used in this context, does not simply refer to delay in *collection* of the judgment, but rather to delay in its *finality*. Until a judgment is final the respondent is not entitled to *retain* the judgment proceeds nor may the judgment be asserted as a basis for res judicata or collateral estoppel in any other litigation which may exist or arise between the parties. In addition, a respondent, even though in receipt of the judgment proceeds, must still expend time and treasure in defense of the judgment. It is the appellant's act of prosecuting an appeal for the improper motives of harassment (of the respondent) or delay (of judgment finality) which supports the conclusion that the appeal is frivolous. That appellant may have paid the judgment, whether voluntarily or involuntarily,[32] is not determinative.

We are, of course, mindful of *Flaherty*'s caution that "any definition [of a frivolous appeal] must be read so as to avoid a serious chilling effect on the assertion of litigants' rights on appeal. Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal. An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions." (*In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 650.) However, that limitation has no application here. Under no legal analysis can we conclude that any of Rosenthal's contentions are "arguably correct." As we have exhaustively explained, they lack merit and simply are part and parcel of Rosenthal's efforts to obfuscate the issues and extend the process of resolution. (See *Weber* v. *Willard* (1989) 207 Cal.App.3d 1006, 1009-1010 [255 Cal Rptr. 165]; *Dwyer* v. *Crocker National Bank* (1987) 194 Cal.App.3d 1418, 1439-1440 [240 Cal.Rptr. 297]; *Maple Properties* v. *Harris* (1984) 158 Cal.App.3d 997, 1009-1010 [205 Cal.Rptr. 532].)

---

[31] In view of our conclusion as to Rosenthal's improper motives, we need not address the particular question of whether "any reasonable attorney would agree that the appeal is totally and completely without merit." It is sufficient that we have found his appeals to be without merit and intended only to harass and delay CEH.

[32] Although the parties agree that CEH's judgment has been satisfied, the record does not reflect whether it resulted from a voluntary payment, some kind of set-off or an execution process.

Finally, we also note that because of due process considerations, "Penalties for prosecuting frivolous appeals should not be imposed without giving fair warning,[33] affording the attorney an opportunity to respond to the charge, and holding a hearing. Further, when imposing sanctions, the court should provide the attorney with a written statement of the reasons for the penalty." *In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 654.)[34]

With respect to Case Nos. B033315 and B025896, we therefore conclude that the appeals filed therein by Kaplan for his client, Rosenthal, are without merit and were brought for no other purpose than to harass CEH and to delay the finality of the judgment awarded. The only apparent effect or purpose of these tactics by Rosenthal has been to force CEH to exhaust a substantial portion of whatever assets they may have now recovered under the judgment in the effort to collect and retain such proceeds. This, in our view, constitutes the harassment condemned by *Flaherty* and is intolerable.

As we recently explained in a case where litigation was forced and extended by a defendant in order to avoid or delay the enforcement of a legitimate creditor's claim, "It is perhaps time that the courts, both trial and appellate, begin to speak and react more forcefully with respect to cases such as this one. Such an abuse of the legal system for no other purpose than to avoid paying a legitimate claim simply can no longer be tolerated. It is not fair to the opposing litigant who is victimized by such tactics and it is not fair to the greatly overworked judicial system itself and those citizens with legitimate disputes waiting patiently to use it. In those cases where such abuse is present, an award of substantial sanctions is proper." (Fn. omitted.) (*National Secretarial Service, Inc.* v. *Froehlich* (1989) 210 Cal.App.3d 510, 526 [258 Cal.Rptr. 506].)

Kaplan, as counsel for Rosenthal, necessarily bears some responsibility in this matter as well. The briefs which Kaplan filed on Rosenthal's behalf in these appeals contain numerous misleading, incomplete and false statements of fact[35] and inexplicably, totally ignore the specific trial court findings

---

[33] We find that such fair warning and notice has clearly been given in this case. Indeed, CEH did more than simply request sanctions as part of the regular briefing process. Specific separate written requests were submitted to the court and served on Rosenthal and OMS and were addressed by them in responsive memoranda. The issue was also discussed in some detail at oral argument.

[34] It is our intention that this opinion shall constitute such statement of reasons.

[35] For example, Kaplan argued that (1) *Rosenthal appeared for "several" depositions*; in fact, he appeared for two morning sessions, one in March 1986 and one in July 1986 and departed each without notice or an offer to return; (2) *Rosenthal responded timely to interrogatories in response to the Stipulation and the June 5 Order*; in fact, Rosenthal did not at any time respond in a timely manner and the tardy responses he did make consisted of objections

which are dispositive of the arguments raised in the appeals. The appellate attack on the orders of June 5 and August 29, 1986, was based on issues that had been resolved by the Stipulation and the June 5 Order and is totally frivolous. As noted, *supra,* the trial court has repeatedly rejected Rosenthal's factual claims, and yet Kaplan, without any showing whatever that the trial court's factual determinations are not supported by substantial evidence, simply attempted to relitigate them on appeal. Thus, while we hold Rosenthal almost entirely responsible in this matter, Kaplan, by acquiescing in Rosenthal's demands, made his wasteful and frivolous appeals possible.

As the court stated in *Cosenza* v. *Kramer, supra,* 152 Cal.App.3d 1100, 1103, "An attorney in a civil case is not a hired gun required to carry out every direction given by the client. (Bus. & Prof. Code, § 6068, subd. (c).) As a professional, counsel has a professional responsibility not to pursue an appeal that is frivolous or taken for the purpose of delay, just because the client instructs him or her to do so. (Rule 2-110C, Rules Prof. Conduct.) Under such circumstances, the high ethical and professional standards of a member of the bar and an officer of the court require the attorney . . . to withdraw from the representation of the client."

In determining the appropriate relief, the underlying policy of Code of Civil Procedure section 907 should control. "The object of imposing a penalty for frivolous appeal is twofold—to discourage the same, as well as to compensate to some extent for the loss which results from the delay. . . . [¶] In determining the amount . . . in this case for a frivolous appeal we should consider the facts with relation thereto and the effect of the delay." (*Huber* v. *Shedoudy* (1919) 180 Cal. 311, 316-317 [181 P. 63]; see also *Kim* v. *Walker* (1989) 208 Cal.App.3d 375, 384-385 [256 Cal.Rptr. 223].)

In this case, such sanctions are most properly measured by the reasonable attorneys' fees incurred by CEH in responding to Rosenthal's appeals. We have determined from our review of the record and an examination of the

and evasion, all contrary to the express terms of the Stipulation and the June 5 Order; (3) *Rosenthal had done his best, had engaged in "yeoman efforts" to comply with all discovery requests and had "produced virtually every document" in his possession*; in fact, Rosenthal repeatedly refused to produce original documents in his possession, failed to produce identified documents, served unverified responses and produced only illegible copies of some of the originals and also produced only a small portion of the documents requested and refused for no good reason to let any documents be marked in the abbreviated deposition sessions which he did attend; (4) *Rosenthal did not know the Stipulation was to become an order*; in fact, as we have explained, the evidence before the trial court was overwhelming that Rosenthal was well aware of both the Stipulation and the June 5 Order and repeatedly acted in a manner which ratified it.

briefs filed (including the declarations which describe the time spent and the applicable hourly rates), the amount of reasonable attorneys' fees incurred by CEH in Case No. B033315 to be $91,866 and in Case No. B025896 to be $27,043.[36] These fees, totaling $118,909, are to be paid $113,909 by Rosenthal and $5,000 by Kaplan. This apportionment, in our view, represents a fair and proper distribution of the responsibility for these appeals.[37]

■ With regard to OMS's appeals in consolidated Case No. B024983,[38] we reach an entirely different result. Whatever the effect of OMS's act of appealing these sanction orders, they raised only a very limited argument on a specific point, which did not call for the massive responsive brief filed by CEH. We have found that point to be without merit, but we do not agree that OMS's appeals meet either the subjective or objective tests of *Flaherty.*

While we certainly can not condone or excuse OMS's trial court behavior in this matter we do not find their efforts in these appeals, in which they sought a more favorable judicial reaction to their claimed "ethical dilemma," to be frivolous. They were wrong and grossly misguided but, in these circumstances, they are not deserving of sanctions beyond those already imposed by the trial court. We will therefore deny CEH's request for sanctions against OMS in case Nos. B024983 and B026834.

2. *Sanctions Payable to the Clerk*

■ Finally, it must be said that the handling of this case has imposed an enormous burden on this court. The record on appeal alone exceeds

---

[36] We reject CEH's request to impose sanctions based on a "lodestar" method of calculation which would result in an award equal to four times their regular hourly rates. In our view, if CEH receives recompense at its regular rates for the reasonable time spent on these appeals, that is all that fairness and justice require. The additional sums described in the CEH declarations as costs incurred for copying and brief preparation appear to be part of the costs allowable on appeal and are therefore not recognized here.

[37] Due to the special circumstances of this case, we have determined that the great majority of these sanctions should be assessed against Rosenthal. As a former attorney, he is well aware of the professional standards of a member of the bar and his conduct has constituted a flagrant and intentional misuse of the appellate process. Due to his prior experience and also due to the fact he is the beneficiary of the delay and disruption, he must be held to have the greatest responsibility for pressing this appeal and exacerbating an already appalling situation.

[38] As we previously explained, in Case No. B024983 OMS appeals from the sanctions, imposed by Judge Cardenas in the November 20 Order, against Rosenthal and Schulte. Case No. B026834 is the OMS appeal from Judge Ross's December 16 Order which imposed sanctions against Rosenthal and OMS, as well as each of the three name partners. The third case included in this court's consolidation order of August 12, 1988 (Case No. B026957) is a meritorious appeal from Judge Lewin's refusal to grant OMS's motion for relief under Code of Civil Procedure sections 882 and 883. This latter case does not involve CEH and is not the subject of CEH's sanction request or our discussion of the issue.

7,500 pages. The parties have filed a substantial number of extensive briefs. In addition, the court had to review and consider, in the eight months preceding oral argument, a number of procedural motions, each of which was vigorously contested. This should not be understood as a criticism of CEH, however. In our view, these respondents, apart from a bit of overkill in the consolidated appeals of OMS, had little choice but to make the thorough and detailed presentation which they did. Because of the labyrinth of confusing detail arising from months of discovery and related motion activity, CEH had to make a full exposition of the conduct, positions and arguments of Rosenthal, as well as the context in which they occurred, in order to demonstrate why the trial court's rulings were so clearly correct.

For all of the reasons already discussed, the fault for the imposition of this burden on the judicial system must be laid at Rosenthal's door. For far too long in this case his actions have resulted in confrontation, dispute and acrimony, all of which has only multiplied the litigation demands and need for judicial involvement. Thus, we properly assign blame to Rosenthal for the imposition upon this court of a costly, time-consuming and frivolous appeal.

In *Finnie* v. *Town of Tiburon* (1988) 199 Cal.App.3d 1, 17 [244 Cal.Rptr. 581], the court correctly observed that respondents are not the only parties damaged when an appellant pursues a frivolous claim. Others with bona fide disputes, as well as the taxpayers, are prejudiced by the wasteful diversion of an appellate court's limited resources. For all of the reasons already noted, we have determined that the imposition of such additional sanctions is appropriate in this case.[39]

In *Finnie,* the court held that an appropriate measure of sanctions should also compensate the State for its expense in processing, reviewing and deciding a frivolous appeal. That court "conservative[ly]" estimated the cost of processing an average civil appeal and imposed that amount as a sanction. We have independently determined that the cost for such an average appeal in this District is the sum of $3,995.[40]

---

[39] Prior to oral argument we directed the clerk of this court to give written notice to all counsel that we were considering an award of sanctions under *Finnie* v. *Town of Tiburon, supra,* 199 Cal.App.3d at page 17. Thereafter, the parties submitted written letter briefs addressing the issue and it was discussed at oral argument.

[40] In *Finnie,* the court accepted a calculation of $2,324 as the cost for "process[ing] an average civil appeal." However, our independent review of a cost analysis prepared by the Administrative Office of the Courts in July of 1987 reflects a higher figure. When all costs (total annual cost of operations = $40,376,000) are considered, together with the average annual time spent by judicial officers on all matters (1562.3 judge hours per year), a cost per judge hour of $335.63 results. When this is multiplied by the average annual time spent on *case-related matters* (1249.86 judge hours per year) an annual average cost per justice for *all* cases is

However, this is far from the average case. As we have noted, this case, with a voluminous record and the need to consider and resolve multiple issues, imposed a substantially greater burden. After a careful consideration of all of the facts of this case, which we have already discussed in such detail, we have determined that a proper total cost to the State assignable to this case is the sum of $25,000.[41] Of this total sum, only the amounts chargeable to Rosenthal's appeals (Case Nos. B033315 and B025986) should be considered (i.e., $20,000). Therefore, Rosenthal shall be directed to pay the sum of $20,000 to the clerk of this court as additional sanctions.

## DISPOSITION

*Case No. B033315*: The judgment is affirmed. Respondent J. M. Young shall receive costs on appeal. We find this appeal to be frivolous. We therefore assess, as sanctions, against Jerome P. Rosenthal the sum of $88,366 and against his attorney, Ronald P. Kaplan, the sum of $3,500. Said sanctions shall be payable to J. M. Young in addition to the costs on appeal. In addition, Jerome P. Rosenthal is assessed and directed to pay forthwith to the clerk of this court sanctions in the sum of $15,000.

*Case No. B025896*: The November 20 Order imposing sanctions against Jerome P. Rosenthal is affirmed. The December 16 Order imposing sanctions against Jerome P. Rosenthal is affirmed. Respondent J. M. Young shall receive costs on appeal. We find this appeal to be frivolous. We therefore assess, as sanctions, against Jerome P. Rosenthal the sum of $25,543 and against his attorney, Ronald P. Kaplan, the sum of $1,500. Said sanctions shall be payable to J. M. Young in addition to the costs on appeal. In addition, Jerome P. Rosenthal is assessed and directed to pay forthwith to the clerk of this court sanctions in the sum of $5,000.

*Consolidated Case Nos. B024983 and B026834*: The November 20 Order imposing sanctions against Schulte is affirmed. The December 16 Order imposing sanctions against Oring, Margolese and Schulte, a partnership, as well as Mark Oring, Vana Parker Margolese and Victor A. Schulte is affirmed. Respondent J. M. Young shall receive costs on appeal. Respondent's request for sanctions is denied.

---

determined to be $419,492.72. We divided this sum by 105 (the average number of all appeals, including criminal, decided annually per justice in the Second District). This resulted in an average cost per appeal of $3,995. While we recognize that the average civil appeal takes longer to process than the average criminal appeal, and thus would justify a higher average number, we have conservatively determined to use this lower number for purposes of determining the appropriate sanctions in this case.

[41] Of this total amount, $15,000 is allocated to Case No. B033315 and $5,000 to Case No. B025896.

*Consolidated Case No. B026937*: The March 9, 1987, order of Judge Lewin denying OMS/Schulte's motion for claim of contribution/repayment is reversed. Upon remand, the trial court is directed to enter its order requiring Jerome P. Rosenthal to pay the sum of $7,250 to Victor A. Schulte, as a one-half contribution of the sanctions imposed by the trial court in the November 20 Order.

That portion of Judge Lewin's said order which refused to determine and require contribution with respect to the December 16 Order is also remanded to the trial court for a determination of the extent of Rosenthal's due proportion of liability in accordance with the views expressed herein.

OMS, Mark Oring, Vana Parker Margolese and Victor A. Schulte shall recover their costs on appeal in Case No. B026937 from the defendant Jerome P. Rosenthal.

Finally, as required by Business and Professions Code section 6089, subdivision (b), a copy of this opinion shall be forwarded to the State Bar.

Klein, P. J., and Arabian, J., concurred.

The petitions of respondent and appellant for review by the Supreme Court were denied October 11, 1989. Lucas, C. J., and Mosk, J., did not participate therein.